**Nos. 23-1362, 23-1667, 23-2041**

# United States Court of Appeals
# for the Federal Circuit

VROOM, INC., VROOM AUTOMOTIVE, LLC, dba
Vroom, dba Texas Direct Auto, CARSTORY, LLC,
VAST.COM, INC., dba CarStory,
*Plaintiffs-Appellees*

v.

SIDEKICK TECHNOLOGY, LLC,
*Defendant-Appellant*

Appeal from the United States District Court for the District of New Jersey in
No. 2:21-cv-06737-WJM-JSA, Judge William J. Martini.

**DEFENDANT-APPELLANT SIDEKICK TECHNOLOGY, LLC'S**

**REPLY BRIEF**

**K&L GATES LLP**

Devon C. Beane
Nathan J. Fuller
70 W. Madison Street
Suite 3100
Chicago, IL 60602
(312) 807-4436

*Attorney for Defendant-Appellant*

Date: March 22, 2024

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................1

ARGUMENT ........................................................................................4

I.    RELIANCE ON THE INTRINSIC RECORD DOES NOT PRECLUDE THE
      EXISTENCE OF DISPUTED FACTS FAVORING THE NON-MOVANT ...................4

II.   VROOM FAILS TO JUSTIFY THE DISTRICT COURT'S DECISION THAT
      A SINGLE CLAIMS WAS REPRESENTATIVE OF 405 DIFFERENT
      PATENT CLAIMS ............................................................................6

III.  VROOM'S RESPONSE CONFIRMS THE DISTRICT COURT
      ERRONEOUSLY RESOLVED FACTUAL DISPUTES AGAINST SIDEKICK ..............7

      A.    At *Alice* Step One, The District Court Erred In Failing To
            Consider The Claims In Light Of the Intrinsic Record ........................8

      B.    The District Court's *Alice* Step Two Analysis ...................................12

IV.   SIDEKICK HAS NOT FORFEITED ANY PATENT ELIGIBILITY
      ARGUMENTS ...............................................................................15

CONCLUSION ....................................................................................16

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
  882 F.3d 1121 (Fed. Cir. 2018) ...................................................12, 14

*Alice Corp. v. CLS Bank Int'l*,
  573 U.S. 208 (2014)..............................................................1, 2, 8, 12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................1, 3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................1

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018) ......................................................2, 6

*In re Bill of Lading*,
  681 F.3d 1323 (Fed. Cir. 2012) ..........................................................1

*CardioNet, LLC v. InfoBionic, Inc.*,
  955 F.3d 1358 (Fed. Cir. 2020) ..........................................................8

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
  927 F.3d 1306 (Fed. Cir. 2019) ......................................................6, 14

*Content Extraction & Transmission LLC v. Wells Fargo Bank*,
  776 F.3d 1343 (Fed. Cir. 2014) ..........................................................4

*Data Engine Techs. LLC v. Google LLC*,
  906 F.3d 999 (Fed. Cir. 2018) .................................................11, 12, 14

*Fowler v. UPMC Shadyside*,
  578 F.3d 203 (3d Cir. 2009) ...............................................................1

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
  566 U.S. 66 (2012).................................................................................2

*TecSec, Inc. v. Adobe Inc.*,
  978 F.3d 1278 (Fed. Cir. 2020) .............................................4, 8, 10, 11

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
   574 U.S. 318 (2015)............................................................................................5

*Visual Memory LLC v. NVIDIA Corp.*,
   867 F.3d 1253 (Fed. Cir. 2017) ........................................................................14

**Statutes**

35 U.S.C. § 282...................................................................................................13

**Other Authorities**

Federal Rule of Civil Procedure 12 .................................................................*passim*

## INTRODUCTION

Dismissal under Rule 12 requires a finding that a cause of action is not plausible after accepting as true all facts plead by the non-movant and drawing all reasonable inferences in favor of the same. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 209-11 (3d Cir. 2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)); *In re Bill of Lading*, 681 F.3d 1323, 1331-32 (Fed. Cir. 2012) (discussing *Iqbal* and *Twombly*). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

The record below (including the pleadings and reasonable inferences drawn therefrom) contains factual allegations and inferences that support a finding of patent eligibility, i.e., that the eligibility of the patents-in-suit is plausible when the plausibility standard is correctly applied. In failing to accept as true certain factual allegations—primarily, statements made in the specification of the patents-in-suit and in the prosecution history—the district court fundamentally erred in determining the eligibility of the patents-in-suit. The district court found facts and drew inferences against the non-movant, Sidekick, and in favor of ineligibility. In so doing, the district court invalidated 405 claims belonging to 3 patent lineages encompassing 12 patents—10 of which issued after *Alice*—in total without

1

providing Sidekick the opportunity to develop the extrinsic record through fact and expert discovery.

In response to Sidekick's opening brief, Vroom makes a series of flawed arguments to defend the faulty reasoning that pervades the district court's decision. First, Vroom argues that rulings based on only the intrinsic record are purely legal determinations devoid of fact finding. But this argument contradicts precedent from both the Supreme Court and this Court that the eligibility analysis includes factual determinations even if the ultimate decision is a matter of law. *E.g.*, *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018) (recognizing that "whether a claim recites patent eligible subject matter is a question of law which may contain underlying facts" with support from and analysis of *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66 (2012) and *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 215 (2014)).

Vroom then presents erroneous arguments about Sidekick's position. For example, Vroom argues that Sidekick failed to present the district court with any evidence in support of eligibility, arguing Sidekick has forfeited the right to present its evidence to this Court. *See, generally*, ECF No. 36. This argument is belied by the record below: Sidekick clearly and consistently relied upon the intrinsic record to assert eligibility before the district court. Appx404-433. Further, Sidekick has not presented any argument to this Court that was not also presented below. *Compare*

*id.*, *with* ECF No. 30 at 12-30. Vroom also argues that the intrinsic evidence Sidekick presented to the district court should be ignored by this Court because it is self-serving. Not only does this directly contradict Vroom's claim that Sidekick failed to present this evidence below, but Vroom's argument also contradicts decades of binding Supreme Court authority that at the pleadings stage, all factual allegations are to be accepted as true with the exception of conclusory statements and threadbare recitals. *Iqbal*, 556 U.S. at 678.

That Vroom lacks any basis to justify the district court's decision is apparent given that it resorts to false (and irrelevant) claims that Sidekick is a non-practicing entity. *See* ECF No. 36 at 3 (Sidekick "owns several patents, but alleges no business of its own other than the development of 'technology,' acquisition of patents, and assertion of patents."). Not only is the inference Vroom seeks untrue, Sidekick's business practices are immaterial to the issue before the Court—i.e., whether Sidekick's asserted patent claims plausibly recite patent eligible subject matter.

The question before this Court is simple: whether the district court improperly resolved factual disputes on a Rule 12 motion in favor of Vroom. As highlighted below, factual disputes existed before the district court at both steps of the eligibility

analysis.[1] At step one, the parties disputed claim representativeness and claim characterization. At step two, the parties disputed whether the claims recited something more than well-understood, routine, and conventional activities. At each step, the district court resolved disputes of fact against Sidekick and largely ignored intrinsic evidence. As a result, the district court's decision should be reversed and the case remanded for further proceedings.

## ARGUMENT

## I.    Reliance On The Intrinsic Record Does Not Preclude The Existence Of Disputed Facts Favoring The Non-Movant

Vroom begins its response asserting there are no facts in dispute because the district court's decision relied entirely on the intrinsic record and was thus a purely legal determination without fact finding subject to *de novo* review. ECF No. 36 at 16-26. Vroom reaches this fundamentally flawed conclusion based upon cases relating to appellate review of ***claim construction or prosecution history estoppel***.

---

[1]    While this Court has not explicitly stated that step 1 includes "determinations of fact," this Court certainly recognizes the existence of subsidiary inquiries that a court may make when determining whether a claim is directed to an abstract idea that can only be described as "determinations of fact." These subsidiary inquiries include but are not limited to (1) claim representativeness, (2) claim characterization, and (3) what the intrinsic record asserts to be the claimed advance. *See, e.g.*, *Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (reviewing district court's determination of claim representativeness as part of step 1 analysis); *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1294 (Fed. Cir. 2020) (identifying claim "characterization" and "what the patent asserts to be the claimed advance" as subsidiary inquiries under step 1).

*Id.* at 17-22 (citing *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 388-89 (1996); *Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1364 (Fed. Cir. 2020); *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 319-20 (2015)).

While Sidekick agrees as a general matter that when the district court relies on extrinsic evidence to resolve a fact dispute, appellate courts apply the clear error standard on that discrete issue (*see, e.g.*, *Teva Pharms*, 574 U.S. at 333 ("[T]o overturn the judge's resolution of an underlying factual dispute, the Court of Appeals must find that the judge, in respect to those factual findings, has made a clear error.")), Sidekick disputes that Vroom's cited authority controls the outcome of this appeal. Vroom takes this precedent a step too far by asserting that *de novo* review automatically means an absence of factual disputes or factual allegations rendering judgment on the pleadings necessarily appropriate. *E.g.*, ECF No. 36 at 2 ("The district court's legal analysis of the intrinsic record does not constitute factfinding"); *id.* at 20 ("*Teva* makes clear—factual issues that prevent a dismissal arise only from extrinsic evidence, and rulings based on only intrinsic evidence are purely legal determinations.") (citing *Teva*, 574 U.S. at 319-20). Vroom's cited authority provides no support for this conclusion.

Further, Vroom's conclusion is contradicted by every opinion of this Court in which this Court has remanded a case because the district court did not accept as true the non-movant's factual allegations or otherwise engaged in factual

determinations. This Court's precedent makes clear that factual disputes can (and do) arise that necessitate remand to the lower court, even when the lower court considers only the intrinsic record. *See, e.g., Cellspin Soft, Inc. v. Fitbit, Inc.,* 927 F.3d 1306, 1317-19 (Fed. Cir. 2019) (dismissal under step two inappropriate because it required a determination of which techniques were "well-known or conventional" in the prior art); *Berkheimer*, 881 F.3d at 1368-70 (summary judgment appropriate for some claims based solely on intrinsic evidence and summary judgment inappropriate where the court needed to make a factual determination about whether the technology covered by the patent was "well understood, routine, and conventional" which required extrinsic evidence). Thus, Vroom's reliance on its cited authority is misplaced and does not dictate the outcome of this appeal.

## II. Vroom Fails To Justify The District Court's Decision That A Single Claims Was Representative of 405 Different Patent Claims

The question before this Court is whether the district court improperly resolved factual disputes on a Rule 12 motion when it found 405 claims across twelve patents ineligible based on a single claim from the '984 Patent. On this point, Sidekick's opening brief identified a series of factual allegations that generated factual disputes at each step of the subject-matter eligibility analysis that the district court improperly resolved against Sidekick on motion under Rule 12(c). Vroom's attempt to explain away the district court's decision falls well short of the mark.

With respect to representativeness, Vroom's response fails to address Sidekick's argument on appeal at all: Sidekick argued in its opening brief that a court should adopt the non-moving party's position (Sidekick's) when proceeding through the eligibility analysis, and by not doing so, the district court resolved a factual dispute as to which claims are representative against Sidekick. ECF No. 30 at 14 (citing *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018)). Vroom's response talks pasts this point and provides arguments not relevant to the points in Sidekick's opening brief. *See* ECF No. 36 at 53-55. Given this failure to address Sidekick's central argument as to representativeness, Vroom provides no basis for this Court to affirm the flawed decision below. Furthermore, by finding claim 1 of the '984 Patent representative of 405 claims despite Sidekick's protestations and factual arguments below, the district court improperly resolved this factual dispute against Sidekick, the non-movant, on a Rule 12 motion.

## III. Vroom's Response Confirms The District Court Erroneously Resolved Factual Disputes Against Sidekick

As it did in the district court, Vroom's response offers patent eligibility arguments that rely upon different portions of the intrinsic record, which only underscores the existence of factual disputes at each step of the eligibility analysis below. Presented with these disputes, the district court resolved them in favor of Vroom, the movant, and not Sidekick, the non-movant.

**A.    At *Alice* Step One, The District Court Erred In Failing To Consider The Claims In Light Of the Intrinsic Record**

The district court erred at *Alice* step one when it failed to accept Sidekick's characterization of the claims and failed to consider the claims as a whole in light of the specification and the prosecution history, all of which are relevant in the "directed to" analysis. *E.g.*, *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1372-73 (Fed. Cir. 2020); *TecSec*, 978 F.3d at 1292, 1295-96.

Claim 1 recites a "manufacturer interface" that allows the manufacturer to interact with the consumer, and a "manufacturer response," which is communicated from the manufacturer to the consumer via the consumer interface. Appx891 (cl. 1).

The specification makes clear that allowing the manufacturer to participate in the automobile transaction solves a problem with prior art systems. *See*, *e.g.*, Appx882 (1:17-37); Appx422[2] (citing to the intrinsic record before the district court). Starting with the background, the '984 Patent provides that when purchasing an automobile, "the negotiation process is a zero sum process, and because the consumer and the dealer are each trying to get a better deal, there is typically some lack of trust during the negotiation." Appx882 (1:25-27). Furthermore, the background recognizes that "automobile manufacturer also have an interest in the

---

[2] Although the citation here is to the '925 Patent, the '984 and '925 both identify the same problem and are incorporated by reference into each other. *See* Appx882 (1:8-34) & Appx925 (1:8-33).

market prices for automobiles, because the market activity captured as automobile market information may allow the manufacturer to, for example, more profitably determine which automobiles to manufacture, what prices the manufacture should offer to dealers, and whether manufacturer incentives should be offered on existing dealer automobile inventory." Appx882 (1:44-51). Thus, the prior art was a zero sum struggle between the consumer and the dealer with the manufacturer sitting on the sidelines without any means of participating.

To resolve this problem, the specification discloses a specific means of improving the relevant technology: a "new and innovative system, methods and apparatus for providing automobile market information and performing automobile transactions" that allows a consumer to "provide a request for a manufacturer response indicating whether a specific automobile can be provided." Appx882 (1:55-64); *see also*, *e.g.*, Appx403-04 & Appx424-25 (citing to the intrinsic record before the district court). The new and innovative system allows the manufacturer to receive market data and respond to a consumer directly. Appx882 (1:64-2:1); *see also*, *e.g.*, Appx424-25 (citing portions of the prosecution history before the district court that state the same proposition). By allowing a consumer, dealer, and manufacturer to participate in the negotiation process via a manufacturer interface, the '984 Patent provides a specific improvement to previous networks that facilitated automobile transactions. According to the specification, through this specific improvement, a

consumer "may benefit from more competition pricing, piece of mind knowing that a fair market price is being offered for prospective purchases, and improved delivery options that allow the consumer to weigh the benefits and drawbacks of different delivery options, pricing, and other variables." Appx889 (15:11-16); *see also*, *e.g.*, Appx430-31 (citing to statements in the prosecution history before the district court). Finally, the specification provides that the recited system and methods lead to benefits over the prior art: "The integration of the various types of automobile market data 506 received from the consumer interface 304, dealer interface 306, and manufacturer interface 308 may provide a synergistic and optimal resource for consumers, dealers, and manufacturers alike." Appx889 (16:29-33); *see also*, *e.g.*, Appx412 (citing the same portion of the intrinsic record before the district court). Thus, the specification supports a finding that the manufacturer interface is a claimed advance over prior art networks. *TecSec*, 978 F.3d at 1292.

The prosecution history reinforces that the manufacturer's interface is the claimed advance. *See* Appx424-25 (citing Appx509). For example, in an appeal brief filed during the prosecution of the '984 Patent, Sidekick explained:

> [T]he present application discloses a system that includes a consumer interface 304, a dealer interface 306, and a manufacturer interface 308, which allows consumers, dealers, and manufacturers, to affirmatively interact with each other, rather than passively provide information to the system. For example, this system allows a manufacturer, using the manufacturer interface 308, to provide a response that guarantees that a consumer can actually obtain a specific automobile, in contrast to the

cited prior art, in which a manufacturer does not ensure that a consumer can actually obtain the specific automobile.

Appx509. Thus, the prosecution history also provides further support that the claims are directed to an advancement over the prior art.[3] *TecSec*, 978 F.3d at 1292.

The district court found at step one as a subsidiary factual determination that claim 1 of the '984 Patent is characterized as "collecting and using automobile market and user data to facilitate automobile transactions" when Sidekick asserted that the claim is directed to an improved network to facilitate automobile transactions as supported by the intrinsic record. Appx410-11 (identifying claim elements that were not accounted for in Vroom's characterization of the claims). Having overgeneralized the claims, the district court readily found the claims to be directed to an abstract idea that did not involve a "technological improvement or advance in computer or network functionality." Appx10. While claim 1 is not directed to an improvement specifically in the underlying technology of a computer (e.g., a faster processor or computer), the '984 Patent facilitates interactions in an automobile transaction network that were not accounted for in the prior art. Accordingly, the manufacturer interface was a specific advancement over the prior art that improves the functioning of a network designed to facilitate an automobile

---

[3]   To the extent that Vroom argues that the claims do not recite an advancement over the prior art, such arguments are "reserved for §§ 102 and 103" and have no weight in an eligibility analysis. *Data Engine*, 906 F.3d at 1011.

transaction. Therefore, the district court erred when, on a Rule 12 motion, it characterized claim 1 of the '984 Patent to be directed to "collecting and using automobile market and user data to facilitate automobile transactions."

### B.    The District Court's *Alice* Step Two Analysis

At step two, the district court disregarded this Court's jurisprudence holding "[w]hether the claim elements or the claimed combination are well-understood, routine, conventional is a question of fact." *Aatrix*, 882 F.3d at 1128. Here, as in *Aatrix*, step two "cannot be answered adversely to [Sidekick] based on the sources properly considered on a motion to dismiss, such as the complaint, the patent, and materials subject to judicial notice." *Id.* Statements from the specification and the prosecution history cited by Sidekick (which are properly considered at the Rule 12 stage) must be considered and accepted as true. *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1007, 1008 n.2 (Fed. Cir. 2018). Nevertheless, the district court ignored these statements, engaged in factfinding at step two, and resolved factual disputes against Sidekick. Appx14 ("Some of the specific claim limitations highlighted by Sidekick are routine, well understood features…").

Vroom takes issue that Sidekick offers no extrinsic evidence. *See*, *e.g.*, ECF No. 36 at 2 ("Sidekick's brief nowhere cites any alleged fact from, for example, the complaint or any extrinsic source."). However, this argument fails for multiple reasons. First and foremost, Sidekick asserted below, in its opening brief, and asserts

again here that the intrinsic record alone establishes the eligibility of the asserted claims. At a minimum, it created a factual dispute that precluded granting a judgment on the pleadings. Thus, Vroom's argument that the claims are somehow ineligible because Sidekick has not offered specific extrinsic evidence (i.e., extensive factual allegations in Sidekick's counterclaims) fails to address Sidekick's primary argument on appeal: the district court failed to apply the correct standard when it did not accept as true statements in the intrinsic record and resolved factual disputes against Sidekick, the non-movant.

Second, the parties jointly agreed to stay discovery. ECF No. 36 at 11. Thus, at no point during the proceedings below did Sidekick have the ability to develop the extrinsic record through fact and expert discovery.

Third, Vroom fails to recognize that Sidekick was procedurally precluded from offering additional extrinsic evidence given that Vroom did not raise invalidity in its declaratory judgment complaint, which only sought declarations of non-infringement. Appx37-87. Thus, Sidekick only responded with counterclaims of infringement as it had no notice that Vroom was challenging the validity of the patents-in-suit.

Thus, if the Court agrees with Vroom's argument, this Court is effectively requiring that patent owners include extensive pleadings related to validity preemptively regardless of whether validity is an issue in the case in the off chance

a party moves under Rule 12. This will not only waste judicial resources and increase litigation costs, but it contradicts a fundamental tenet of patent law: "A patent shall be presumed valid." 35 U.S.C. § 282. Given this fundamental tenet and the procedural posture in which invalidity was raised for the first time—as an affirmative defense to a counterclaim—the Court should give little weight (if any) to Vroom's argument.

In sum, Vroom's "extrinsic evidence" argument should be disregarded by this Court as Sidekick presented intrinsic evidence that supports a finding of eligibility as summarized above. Nonetheless, the district court's analysis overlooked this intrinsic evidence but for a single citation to the specification. Appx16. Even if the district court disagreed with Sidekick's position on the eligibility of these claims, it is clear that, at a minimum, the record is replete with factual allegations that precluded granting a Rule 12 motion. *Data Engine*, 906 F.3d at 1007; *see also Aatrix*, 882 F.3d at 1125-27; *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1261-62 (Fed. Cir. 2017); *Cellspin*, 927 F.3d at 1316-18.

Accordingly, Sidekick plausibly alleged that all 405 claims are eligible. Focusing on claim 1 of the '984 Patent as the district court did, it is plausible that this claim possesses an inventive concept based on the intrinsic record alone. Because the district court did not correctly apply the Rule 12 standard of review, Sidekick respectfully requests that this Court reverse the district court ruling and

remand the case to allow Sidekick the opportunity to develop the extrinsic record through, among other things, fact and expert discovery.

## IV.    Sidekick Has Not Forfeited Any Patent Eligibility Arguments

Vroom makes several attempts to argue that Sidekick has forfeited arguments, presented new arguments on appeal, and used incorporation by reference to exceed the word count. Vroom is wrong on all accounts. Sidekick, both below and in its opening brief, asserted that the focus of claim 1 of the '984 Patent is allowing the manufacturer to interact directly with a consumer via the recited systems and methods in the claims, specifically the "manufacturer interface" as one of the user interfaces recited in the claims. ECF No. 30 at 16; *also* Appx410 (asserting, before the district court, that the asserted claims are directed to: "an improved automobile sales platform" that uses "specific user interfaces"), Appx422. At step two, Sidekick asserted, both below and in its opening brief, that the arrangement of interfaces is an inventive concept that goes beyond the abstract idea. ECF No. 30 at 25; *also* Appx424-425. Thus, Sidekick presents the same argument here as it did below. Finally, Sidekick provides citations to the record below to demonstrate the consistency between the arguments Sidekick raised below and those it pursues here, not to subvert this Court's word limits.

## CONCLUSION

As the district court applied the wrong standard for a Rule 12(c) motion at each step of the eligibility analysis, Sidekick respectfully requests that this Court reverse and remand to the district court in order for discovery to proceed. This will allow the district court to determine the eligibility of the asserted claims with the benefit of fact and expert discovery.

Dated: March 22, 2024             Respectfully submitted,

<div style="margin-left: 40%;">

By:   /s/ Devon C. Beane
       Devon C. Beane
       devon.beane@klgates.com
       Nathan J. Fuller
       nathan.fuller@klgates.com
       K&L GATES LLP
       70 W. Madison Street, Suite 3300
       Chicago, IL 60602
       Telephone: (312) 807-4436
       Facsimile: (312) 827-8000

       *Attorneys for Defendant-Appellant*

</div>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 22, 2024, a true and correct copy of the foregoing was electronically filed via the Court's CM/ECF system and therefore served on all counsel of record.

/s/ Devon C. Beane
Devon C. Beane

FORM 19. Certificate of Compliance with Type-Volume Limitations

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:**  2023-1362, 2023-1667, 2023-2041

**Short Case Caption:**  Vroom, Inc. v. Sidekick Technology, LLC

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes  3,665  words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 03/22/2024

Signature:  /s/ Devon C. Beane

Name:  Devon C. Beane

Save for Filing